*Southern District*

**KENNETH W. SAUNDERS**

**v.**

**PETER F. ROGERSON, JR.**

**AND**

**PAULA A. ROGERSON**

**AND**

**JOSEPH A. SCAVUZZO**

*Present:* Nash, P. J., Cox & Callan, JJ.

Case tried to *Robinson, J.,* in the District Court of East Norfolk. No. 9998.

*Callan, J.* In this action of contract to recover a broker's commission, the facts, which do not appear to be in dispute, are that the defendants, being the owners of the real estate in question decided to sell it, listed it with several real estate brokers and advertised it in the local papers. They were desirous of obtaining $14,900.00 *net* to themselves. In May of 1959 the plaintiff, having learned the property was on the market for sale, went to

the defendants in consequence of which the plaintiff listed the property for sale at $15,900.00. A few days later the plaintiff brought one Mrs. Smith to see the property. She liked it and later her husband saw it and they agreed with the plaintiff to buy it for $15,900.00. The plaintiff was told by the Smiths that in order to finance the purchase they would have to obtain a so-called Federal Housing type mortgage. An agreement for the purchase and sale of the property was prepared and executed by the Smiths and later by the Rogersons, the defendants. A down payment of $1,000.00 was made at this time to the plaintiff and $14,900.00 was to be paid in cash or certified check on delivery of the deed before July 20, 1959, all as provided in the agreement. The Smiths and Rogersons had never met each other, nor did they ever discuss the terms between them. Neither had counsel. The plaintiff undertook on behalf of the Smiths to obtain a so-called F H A Loan by applying unsuccessfully to several banks, the last of which declined to grant the loan because of the poor credit risk of the Smiths who never succeeded in obtaining a mortgage and were financially unable to complete the purchase on July 20th. They were never either before or after July 20th financially able to purchase the property. The down payment of $1,000.00 was returned by the plaintiff to the Smiths. The plaintiff acted as agent for both buyers and sellers.

The sales agreement, among other things, provided that

"If the buyer shall fail to fulfill the buyer's agreements herein, except buyers' default because of the unavailability of agreed upon mortgage financing, all payments made hereunder by the buyer, may, at the option of the seller, be claimed by the seller as liquidated damages. If the deposit is forfeited, said broker shall be entitled to receive an amount equal to one half of the amount so forfeited, or an amount equal to one half of the commission according to this agreement, whichever is lesser."

The plaintiff filed several requests for rulings, some of which were allowed, some denied as not being material on facts shown and others denied with no reason given. We do not need to set them out in detail. Upon a finding for the defendants the plaintiff claims a report to the Appellate Division.

It has long been the rule of this Commonwealth that "a broker, in the absence of special circumstances, is entitled to a commission if he produces a customer ready, able and willing to buy upon the terms and for the price given the broker by the owner." *Henderson & Beal, Inc. v. Glen,* 329 Mass. 748.

There is no evidence that the defendants expressly promised to pay the plaintiff any commission. If the defendants by authorizing the plaintiff to "List" the property for sale impliedly agreed to pay a commission if the plaintiff found a customer, ready, willing and able to purchase on the defendants' terms, he earned his commission by producing a customer whom they accepted when an unconditional binding sales agreement was ex-

ecuted. *Menton v. Melvin,* 330 Mass. 355; *McKallagat v. LaCognata,* 335 Mass. 376; *Richards v. Gilbert,* 336 Mass. 617. But the facts in this case differ from those in the Menton case in which the defendant engaged the plaintiff to sell the property for $10,500 and that the plaintiff would receive a 5% commission. A binding sales agreement was executed between the buyer and seller. Nothing was said therein about a mortgage. It was an unconditional and unqualified agreement to buy and sell. It was held that by executing this the sellers accepted the buyer as ready, able and willing to purchase on the terms therein stated. In the case in issue the selling price was set by the broker; no mention was made of paying a commission; the sales agreement provided for absolvment of the buyer from performing if unable to obtain mortgage financing; the broker knew of the buyers' need for mortgage financing.

We believe the facts in the case in issue resemble those of *Munroe v. Taylor,* 191 Mass. 483, wherein, under the agreement between the plaintiff broker and the defendant seller, the price at which the property was sold was to fix the amount of the plaintiff's commission. It was contemplated in that case that an actual sale should be effected and that payment to the broker should be made from the price obtained and that any surplus beyond the amount stipulated which the seller was to receive should be paid to the broker for his services. As the court stated,

"What the plaintiff really undertook was not only to find a purchaser at a fixed price but to effect a sale, which meant a payment of that price, and this having been done, he would earn the excess, but until the consideration became payable or the defendant refused to convey, he could not demand a remuneration."

The defendants in the case in issue did not set the price of $15,900.00. They wanted $14,900.00 *net*. Even if the sales agreement executed by the buyers and the defendants is considered as fixing the rights of the plaintiff, *Roche v. Smith,* 176 Mass. 595; *Johnson v. Holland,* 211 Mass. 363; *Stone v. Melbourne,* 326 Mass. 372, his right to a commission was not an absolute one as the agreement absolved the buyers from performing if unable to obtain mortgage financing, which fact the plaintiff well knew was necessary, while he was acting as agent for both buyers and sellers. No sale was effected within the meaning of the brokerage agreement. *Rice v. Mayo,* 107 Mass. 550; *Ward v. Cobb,* 148 Mass. 518; *Burnham v. Upton,* 174 Mass. 408.

The plaintiff's requests raise no question of law other than those herein discussed. We find no error and order the report dismissed.

Charles J. Miller of Boston and Hyannis, for the Plaintiff.

· John J. Brosnahan, for the Defendant.