## PAUL HARRIS DRAKE *vs.* GEORGE W. SWEET.

Middlesex.   January 6, 1950. — March 30, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Broker*, Commission.   *Contract*, With broker, Waiver, Performance and breach.   *Waiver*.

Evidence merely that the owner of a dwelling, who had imposed upon a broker employed to procure a purchaser the condition that, before he would sell, he must find a place to live, about two months later told the broker that he had "found a house" and expected immediately to enter into an agreement to purchase it, and that thereafter the condition was not mentioned by either the broker or the owner, did not warrant a finding that the owner had waived or withdrawn the condition; and the broker by introducing a customer six months later did not earn a commission where it appeared that the owner had not found another house.

A real estate broker, employed to procure a purchaser of a dwelling, was not entitled to a commission where it appeared that a customer introduced by the broker, in an offer for the property at the owner's price, had added to the terms stated by the owner to the broker a condition that certain rooms should be painted by the owner; the mere fact that the owner had told prospective buyers on previous occasions that he intended to do such painting whether or not he sold the property was immaterial.

CONTRACT.   Writ in the Superior Court dated December 10, 1945.

The action was tried before *Collins*, J.

*K. C. Tiffin*, for the defendant.

*V. R. Brogna*, for the plaintiff.

SPALDING, J.   In this action of contract for a broker's commission the plaintiff had a verdict, which was recorded under leave reserved.   The case comes here on the defend-

ant's exceptions to the denial of his motions for a directed verdict and for the entry of a verdict in his favor under leave reserved.

A finding of the following facts would have been warranted: In December, 1943, the plaintiff, a real estate broker, upon learning that the defendant had "listed" his house with several brokers, asked the defendant if he also could "list" the property. The defendant assented, saying, "if you can find me a customer that will pay me $25,000 net to me, irrespective of your commission, you may list it and show it." In March, 1945, the defendant informed the plaintiff that the selling price had been increased to $30,000. On March 29, 1945, the plaintiff informed the defendant that he had found a buyer, one Chernis, who would pay $30,000 for the property. The defendant at that time told the plaintiff that he would have "to find a place to live before he would sell his house." On the following day, March 30, the plaintiff accompanied by Chernis went to the defendant's office with a purchase and sale agreement, but the defendant stated that he would not execute the agreement until he had found a house for himself.[1] The plaintiff understood that this condition had been imposed. On May 12, 1945, the defendant told the plaintiff that he had "found a house" and expected on May 15 to enter into an agreement to purchase it. At the defendant's request the plaintiff communicated with Chernis again but the latter said that he was not interested in the property and the defendant was informed of this fact. The defendant then told the plaintiff to find another customer. Sometime in July, 1945, the defendant told the plaintiff that the selling price had been increased to $35,000, including commission, and that he would pay the plaintiff the usual brokerage fee if he sold the property.

On November 14, 1945, one Kostick, who through the efforts of the plaintiff had become interested in the defendant's property, went to see it with the plaintiff. On the

---

[1] The present action is not based on the Chernis offer.

following day, November 15, Kostick signed a purchase and sale agreement which the plaintiff, without the defendant's knowledge, had drawn up, and gave the plaintiff a check for $500 payable to the defendant. The agreement called for an additional deposit on December 1, 1945, and the balance was to be paid in cash when the sale took place. The agreement was to be performed on or before December 17, 1945, and the purchase price stated therein was $35,000. By the terms of the agreement the firewood, if any, was to be sold and the defendant was to paint the kitchen and the maid's room and bath. The plaintiff admitted that these terms, namely, the painting of the rooms and the sale of the firewood, were never discussed with the defendant. The plaintiff, however, had previously heard the defendant state in the presence of other customers that he intended to paint the kitchen and the maid's room and bath regardless of whether he sold the house. On November 16 the plaintiff wrote a letter to the defendant setting forth the terms of the proposed sale to Kostick which, together with the agreement and the check, he delivered to the defendant. The defendant refused to execute the agreement, stating that he had no house to go to, and handed the papers back to the plaintiff. During the latter part of November the plaintiff endeavored to induce the defendant to enter into an agreement with Kostick by which papers would not pass for seven months, but the defendant refused to do so. At no time between May 12, 1945, and November 16, 1945, did the defendant ever tell the plaintiff that he had not bought the house that he had referred to on May 12. Nor did the plaintiff ever ask the defendant if he had ever acquired another house. On November 29 the plaintiff sent the defendant a bill for a commission, the amount of which, if one was earned, is not in dispute.

The plaintiff's position is that he was employed to procure a customer ready, able, and willing to purchase the property for $35,000 and that when he submitted Kostick's offer he had done all that was necessary to earn his commission. It is familiar law that to recover a commission a

broker ordinarily is required to prove only that he produced a customer who was ready, able, and willing to purchase on the seller's terms. His right to a commission is not affected by the failure of a customer and seller to enter into a binding agreement, or by the refusal of the seller to carry out the transaction. *Barsky* v. *Hansen*, 311 Mass. 14, 16. *Chapin* v. *Ruby*, 321 Mass. 512, 515, and cases cited. If the only terms of the plaintiff's employment were that he was to find a customer ready, able, and willing to purchase the property for $35,000, then the plaintiff on showing that he had procured such a customer would have made out a case. But those were not the only terms of the employment. The defendant told the plaintiff in March that he would not sell unless he found another house in which to live, and the plaintiff understood that this condition had been imposed. That at the time Kostick's offer was submitted the defendant had not found another house is not in dispute. The plaintiff argues that there was evidence from which the jury could have found that this condition had been removed prior to Kostick's offer. But the evidence shows only that on May 12, 1945, the defendant told the plaintiff that he "expected to enter into an agreement for the purchase . . . [of another house] on the 15th of May." Thereafter no mention was made of this condition by either party. We are of opinion, however, that this falls short of a waiver or withdrawal of the condition, and that at the time Kostick's offer was submitted it was still one of the terms of the sale which had to be satisfied before any commission was earned.

Moreover, the offer submitted by Kostick imposed additional terms which the defendant had never authorized. As stated above, in the proposed agreement submitted by Kostick the defendant was required to paint the kitchen and the maid's room and bath. The plaintiff was authorized, subject to the condition previously discussed, to procure a customer who would purchase the property for $35,000. But such a customer was never procured. Kostick

was willing to pay $35,000 but only if the rooms mentioned above were painted. That was a qualified acceptance. The plaintiff does not contend that he was given any express authority to submit these terms and seeks to justify them on the ground the defendant "had previously stated in the presence of customers" that he intended to paint the kitchen and maid's room and bath regardless of whether he sold the house. The fact that the defendant may have told certain prospective buyers on previous occasions that he would do these things did not enlarge the terms which the plaintiff was authorized to submit to Kostick. The plaintiff, therefore, did not produce a customer ready, able, and willing to purchase on the defendant's terms. *C. F. Noyes National Realty Corp.* v. *Kinnell Realty Corp.* 277 Mass. 175. *Siegel* v. *Brockton Savings Bank,* 312 Mass. 614. *Lacombe* v. *Martin,* 319 Mass. 116. *Chapin* v. *Ruby,* 321 Mass. 512, 515. The defendant's motion for a directed verdict should have been granted.

*Exceptions sustained.*
*Judgment for the defendant.*