*Northern District*

No. 5405

**COSTANZA & BERTOLINO, INC.**
**v.**
**ERNEST BABCOCK, AKA, ET AL**

(December 13, 1961)

██ 

*Present:* Eno, J. (Presiding), Northrup & Kalus, JJ.

Case tried to *Lee, J.,* in the Fourth District Court of Eastern Middlesex. No. 121 of 1959.

*Northrup, J.* This is an action of contract in which the plaintiff seeks to recover the sum of $775.00 as a broker's commission for alleged services rendered the defendants in procuring a customer ready, able and willing to purchase certain premises on Oakland Rd., North Reading, Massachusetts. The defendants' answer is a general denial and payment, and failure of the plaintiff to perform its part of the agreement.

*At the trial there was evidence tending to show that* sometime prior to *November* 1, 1958, the defendant, Ernest Babcock, the owner of the premises in question, talked with officers of the plaintiff corporation with view to its procuring a buyer for said premises for $15,900. The agreed commission was to be 5% of the gross sale price. On *November* 1, 1958, as the result of the plaintiff's efforts, a written purchase and sale agreement was entered into between James P. and Nancy Liakos, the prospective purchasers, and Ernest Babcock, one of the defendants. The wife of the said defendant, although named as a seller therein, did not sign the agreement. Only one copy of this agreement was signed and it was introduced in evidence as exhibit

No. 3. While the report states that a second unsigned copy was introduced in evidence as exhibit No. 4, the exhibit itself shows that it is not a copy as stated in the report but differs in many particulars including the date of the agreement, the time for passing of papers and the work to be done by the defendant prior thereto. This so called copy of the agreement also contained a financing condition not found in exhibit No. 3, and omitted an occupancy provision contained therein. The named sellers in both agreements were Ernest G. and Sally Babcock, the defendants.

Thereafter, around the *middle of November*, 1958, a new agreement exhibit No. 5 was executed by the parties. Under this second agreement the purchase price was reduced to $15,500. and the terms of the agreement differed in many respects from both those of the agreement of November 1, 1958 and the so-called unsigned copy, exhibit No. 4.

Included among these differences are the parties thereto, the date for passing papers, the date for figuring adjustments, the provision as to insurance, provision as to commission, outside painting conditions, the purchase and installation by the buyers of electrical fixtures, the grading and seeding of the property, the installation of driveways and walks, and the purchase of the property, except as to these provisions "AS IS". There were other differences in these two agreements which a careful examination of them will disclose. Perhaps the most material difference between these two agreements is

the *provision as to the commission and the terms upon which it would be due and payable*. The first agreement provides that a commission of the prevailing rates *"is due* from the seller to Costanza & Bertolino, Inc." (emphasis added). The second agreement with respect to the commission reads as follows: "It is understood that a broker's commission at rates currently prevailing in North Reading *on the said sale is to be paid to Costanza & Bertolino, Inc."* by the said party of the first part (emphasis added). The second agreement exhibit No. 5 bears no date. However there was testimony that it was executed around the middle or latter part of November, 1958. The report is silent as to whether any deposit, as recited in the first agreement, was made by the purchasers thereunder — but it specifically states that a payment of $500. was made by them under the second agreement. The named seller under the second agreement is Ernest Babcock alone and the signature of Sally Babcock, defendant, is affixed as an assent to her joining in the deed and releasing her dower rights therein. She is not otherwise a party to the agreement. The purchaser under this second agreement is James P. Liakos and while the agreement is signed not only by him, but also by Nancy L. Liakos, presumably his wife, the reasons for her signature on the same is not apparent. The report fails to state why the contemplated sale was never consummated but after the time provided in the agreement for passing papers had expired the plaintiff

brought suit against both defendants claiming a commission of $775. or 5% of the amount set forth in the second agreement.

At the conclusion of the evidence and before final arguments the following requests for rulings were filed by the parties:

*Plaintiff's*

1. The Court should rule that the Plaintiff employed by the Defendant to find a customer ready, able and willing to purchase on defendants' terms earned its commission by producing a customer with whom the defendant entered into an unconditional and unqualified contract to sell the premises on or before a certain date for a stated sum.

2. The Court should rule that the plaintiff's right to commission was fixed when the defendants executed an unconditional and unqualified contract to sell the premises owned by the defendant on or before a certain date for a stated sum.

3. The plaintiff employed to find customer ready, able and willing to purchase on landowner's terms earned commission by producing a customer with whom landowner entered into unconditional and unqualified contract to sell the premises on or before a certain date for stated sum, and plaintiff's right to commission was fixed when plaintiffs executed such contract and was not affected by actual inability of customer to perform.

4. The Court should rule that the plaintiff is entitled to a commission if it shows performance in substantial compliance with the plaintiff's offer.

5. The Court should rule that the plaintiff was

employed to procure a customer ready, willing and able to purchase the defendant's property upon terms satisfactory to the defendant, and having found such a customer is entitled to the commission.

*Defendants'*

1. There is sufficient evidence to warrant a finding for the defendant.

2. There is not sufficient evidence to warrant a finding for the plaintiff.

3. If the terms of the employment of the plaintiff by the defendant provided that the plaintiff was to receive a commission only if an actual sale was made and no sale was in fact made then the plaintiff is not entitled to recover.

The Trial Court allowed all of the plaintiff's requests and denied defendants' request No. 2 and allowed Nos. 1 and 3 conditionally. The Court also made the following memorandum:

"I find the plaintiff produced a buyer, ready, willing and able to purchase the defendants' property on the defendants' terms as set forth in the signed agreement of November 1, 1958. The fact that the additional agreement was entered into subsequently at a reduced price and on different terms contigent upon a sale of said premises and no sale having been made, which would have been fatal to the plaintiff's case if he stood on this subsequent agreement alone (*Kerbie v. Arnold,* —— Mass. ——) does not bar it from recovery in this case. The plaintiff having fully complied with the defendants' terms in the first agreement and supplied a buyer, ready will-

ing and able to purchase is entitled to recover. I do not consider the subsequent agreement as a waiver or release from the first agreement but merely a courteous attempt to help the defendants."

The defendants' claim of aggrievement is to the trial court's rulings on the requests for rulings and the issue before this court is the correctness of the same.

We consider the question of the Trial Court's denial of the defendants' second request for the reason that our ruling thereon will, in our opinion, render the other objections by the defendants, immaterial. We feel obliged to point out that there is nothing whatever in the report which, under any theory of law, would entitle the plaintiff to recover against the defendant Sally Babcock. She was not a party to the first agreement on November 1, 1958, nor was she a party to the second agreement except as to her release of dower. The plaintiff is definitely not entitled to a finding against her. However, it is our opinion that the plaintiff upon the facts set forth in the report, is not entitled to recover as a matter of law.

It is well settled that when a broker procures a customer ready, able and willing to purchase property upon the terms satisfactory to the seller, he is usually entitled to his commission.

In *McKallagott v. LaCognata,* 335 Mass. 376, 378, the Court said:

"It is plain from the evidence recited in the report and the findings of the judge that the defendant employed the plaintiff to procure a customer ready, able, and willing to buy on the defendant's terms. When the plaintiff has done this he is not required to show that a sale resulted or even that a written agreement of sale was ever entered into by the parties."

It follows therefore that when the plaintiff found such a customer, the defendant Ernest Babcock who employed the plaintiff was obligated to pay it a commission. This proposition is further confirmed by the fact that the agreement of *November* 1, 1958, (exhibit 1) specifically states that a commission "is due" the plaintiff. If the case stopped there we might be constrained to rule that the plaintiff was entitled to its commission. However, according to the report a second agreement was entered into and was in effect substituted for the original agreement and the rights of the parties regardless of any previous rights are governed and to be determined thereby. The legal effect of this substitution was something more than "a courteous attempt to help the defendants". There are too many differences in the terms and conditions in these two contracts to consider it such. Furthermore in the second agreement there is no reservation of the plaintiff's rights to a commission as alleged in its declaration. This right might have been preserved thereby but plaintiff did not elect so to do.

Under the second agreement the Trial Court made a specific finding that the

payment of a commission thereunder was conditioned upon an actual sale of the property and we think that the Trial Court's ruling in this respect was correct. While the agreement does not contain the signature of the plaintiff, the report states in effect that the plaintiff helped to negotiate the terms and further that when the agreement was signed by the sellers, it was turned over to the plaintiff who obtained the signatures of the prospective purchasers. It is not contended and upon the facts set forth in the report undoubtedly could not be successfully maintained that the plaintiff was ignorant of the provision as to payment of a commission. The Trial Court made a specific finding that the plaintiff could not recover under this contract and in this conclusion we concur for the reason that no sale was ever consummated. The Trial Court's error consisted in its ruling on the legal effect of the execution of the second agreement to wit that it had no legal effect so far as the plaintiff's right to commission was concerned but was actually only "a courteous attempt to help the defendants".

The finding for the plaintiff is to be vacated and a new finding entered for the defendants.

Charles V. Statuti of North Reading, for the Plaintiff.

William D. Diamond of Boston, for the Defendants.

*Judge Northrup who sat at the hearing of this cause had prepared a rough draft of this opinion. Before completing the final draft thereof he be-

came seriously ill and he has not yet returned to his duties at Court. It has been examined by us and is adopted as the opinion of the majority of the justices who sat at the hearing of this cause without submitting it to him.